# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

JACQUELINE L. ROWE,                    )
                                       )
      Plaintiff,                      )
                                       )
v.                                     )          Case No. CIV-23-326-SLP
                                       )
SCHULTE HOSPITALITY GROUP, LLC,        )
                                       )
      Defendant.                      )

## O R D E R

Before the Court is Defendant's Motion to Dismiss and Brief in Support [Doc. No. 4]. Plaintiff, appearing pro se, has failed to timely respond to the Motion.[1] Also before the Court is Plaintiff's Motion to Stay and Enforce a Judgment [Doc. No. 8][2] and Plaintiff's Response to Defendant Response to Motion for Summary Judgment [Doc. No. 10].[3] For the reasons set forth, Defendant's Motion to Dismiss is GRANTED IN PART

---

[1]  The Court may deem the Motion confessed as a result. *See* LCvR 7.1(g). Nonetheless, the Court must still examine the sufficiency of the allegations of Plaintiff's Complaint. *See Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) ("[E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted.").

[2] Defendant filed a Reply [Doc. No. 9] directed to the Motion to Enforce Judgment. For the reasons discussed infra, the Court deems the Motion to Enforce Judgment untimely, to the extent it could be construed as a response to the Motion to Dismiss. Accordingly, the Court need not address Defendant's Reply.

[3] This Response was filed approximately three weeks after the deadline for responding to Plaintiff's Motion to Dismiss and without leave of court. The Court, therefore, strikes the response as untimely.

AND DENIED IN PART, Plaintiff's Motion to Stay is DENIED and Plaintiff's Response is STRICKEN.

## I.      Plaintiff's Claims

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2(a)(1), 2000e-3(a), against Defendant, her former employer. Plaintiff alleges she was subject to racial discrimination and retaliation. Plaintiff identifies the following claims for relief: (1) racial slurs/hostile work environment; (2) wrongful write up/discrimination; and (3) retaliation.

## II.     Governing Standard

A party may move to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is proper when the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (citation omitted).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [complaint] alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In reviewing the sufficiency of the complaint, "[a]ll well-pled factual allegations are accepted as true and

viewed in the light most favorable to the nonmoving party." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). However, not all factual allegations are entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). A formulaic recitation of the elements of a claim and other conclusory allegations need not be accepted as true *Id*. at 681 (citing *Twombly*, 550 U.S. at 554-55).

Where, as here, a plaintiff appears pro se, the court liberally construes the pleadings. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). But a pro se plaintiff must still follow the procedural rules that govern all litigants. *Id*. And the court may not act as the plaintiff's advocate. *Hooks v. Atoki*, 983 F.3d 1193, 1196 n. 1 (10th Cir. 2020).

## III.   **Allegations of Plaintiff's Complaint**[4]

Plaintiff alleges that she is a "Black American woman." Compl. at 3. Plaintiff is a former employee of Defendant and was employed by Defendant from May 24, 2021 through her termination on August 31, 2022. *Id*. at 3, 6. Plaintiff was employed as a "Guest Services Representative." *Id*. at 3.

On July 16, 2021, Karen Rogers, "an older white female hotel employee" called Plaintiff "the N-Word." *Id*. at 4. Plaintiff "went into a state of shock and immediately became sick from the invisible traumatic injury, and clock[ed] out early and [left] the hotel before her shift ended." *Id*. Plaintiff filed a grievance with "Human Resources" about Ms. Rogers using racial slurs in the workplace. She included in the grievance a

---

[4] Plaintiff initiated this action in state court by filing a Petition [Doc. No. 1-2] Defendant then removed the action to federal court. *See* Notice of Removal [Doc. No. 1]. Consistent with the nomenclature used by the governing Federal Rules of Civil Procedure, the Court refers to the state-court Petition as the Complaint.

complaint that Ms. Rogers "was making sexual harassment statements toward the black male employees while working at the front desk." *Id*. at 4-5.

On August 22, 2021, Kimberly Bonta, the hotel manager, gave Plaintiff a write-up for a mistake that had been made by Ms. Rogers, not Plaintiff. *Id*. at 5.[5]  On September 18, 2021, Plaintiff filed a grievance with Human Resources about this incident and "provided evidence it was not her" but instead "two white employees." *Id*.

Although Plaintiff was told the two grievances were under investigation, nothing changed in the workplace. *Id*.  Plaintiff alleges the "hostile environment became unbearable."  As a result, Plaintiff requested to change her status from full time to part time "so she [could] focus on caring for her 80-year mother with Dementia." *Id*. Plaintiff began working "Saturday and Sunday and on-call if needed." *Id*.

On November 11, 2021, Plaintiff filed a third grievance "regarding systemic racism relating [to] the wrongful write up that took place on August 22, 2021." *Id*. at 5-6. The following day, on November 12, 2021, Plaintiff alleges she suffered the first of three acts of retaliation.  Ms. Bonta retaliated against Plaintiff by taking her off the weekend schedule for the remainder of the year. *Id*. at 6.  Plaintiff did not work for over sixty days as a result of the retaliation. *Id*.  She returned to work on January 16, 2022. *Id*.

On March 23, 2022, "the Courtyard by Marriott management" received an EEOC charge filed by Plaintiff.  Compl. at 6.  Plaintiff alleges she then suffered a second act of retaliation.  Ms. Bonta retaliated against Plaintiff by taking Plaintiff off the schedule on Sunday, March 27, 2022 even though Plaintiff had not requested to be off on that date.

---

[5] Plaintiff alleges that Ms. Bonta is also white.  *See* Compl. at 6.

4

*Id*.  Plaintiff complained to "Human Resources Director Mr. Ewing."  *Id*.  She was added back to the schedule on the following Sunday, April 3, 2022.  *Id*.

Almost five months later, on August 31, 2022, Defendant terminated Plaintiff's employment.  Compl. at 7.  Plaintiff alleges this was the "third and final retaliation" by Defendant.  *Id*.  Plaintiff alleges she was terminated "during the EEOC mediation."  *Id*.

## IV.  <u>Discussion</u>

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of her sex or race, or to retaliate against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter."   42 U.S.C. § 2000e-2(a)(1), 3(a).  "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  Thus, the Court proceeds to review the elements of Plaintiff's alleged causes of action to determine whether her claims withstand dismissed under Rule 12(b)(6).

### A.    **Racial Slur/Hostile Work Environment**

Plaintiff alleges she was subject to a hostile work environment when, on July 16, 2021, a white, female co-employee, Ms. Rogers, called Plaintiff "the n-word."  Plaintiff further alleges that Ms. Rogers "was making sexual harassment statements toward black

male employees." She does not identify the content of these statements, when they occurred, how often they occurred or any specific individuals to whom they were made.[6]

To state a race-based hostile work environment claim, a plaintiff must plausibly allege facts capable of supporting a reasonable inference "that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (cleaned up). The work environment must be both subjectively and objectively hostile or abusive; i.e., "it is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Lounds v. Lincare*, 812 F.3d 1208, 1222 (10th Cir. 2015). "Under this rubric, the plaintiff must show more than a few isolated incidents of racial enmity." *Id*. at 1223 (cleaned up); *see also Chavez*, 397 F.3d at 832 (To demonstrate a hostile work environment, a plaintiff cannot rely on "a few isolated incidents of racial enmity or sporadic racial slurs" but instead must show "a steady barrage of opprobrious racial comments." (internal quotation marks and citation omitted)).

Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim. *Lounds*, 812 F.3d at 1222. Factors a court

---

[6] Plaintiff's claim appears to be premised solely on allegations of racial hostility. But even if the Court considered her allegations in the aggregate as alleging both racial and sexual hostility, the Court's conclusion that Plaintiff has failed to state a plausible claim for relief would remain the same. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022) (noting that a court may treat such claims separately or in the aggregate).

may consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). Further, "facially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct," and such conduct should be considered in evaluating a hostile work environment claim. *Lounds*, 812 F.3d at 1224 (cleaned up).

As the Tenth Circuit has recognized, "[t]he n-word is a powerfully charged racial term" and "[i]ts use – even if done with benign intent and undirected at anyone specific – can *contribute to* a hostile work environment." *Ford*, 45 F.4th at 1233-34 (emphasis added). Indeed, a single incident involving use of the n-word *by a supervisor* "might well be sufficient to establish a hostile work environment." *Lounds*, 812 F.3d at 1230 (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (emphasis added)); *see also id*. (use of the n-word, coupled with "*on-going offensive racial talk*" is sufficient evidence of race-based harassment that is objectively severe or pervasive) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) (emphasis added)).

Here, Plaintiff alleges a one-time use of the n-word by Ms. Rogers, a coworker, not a supervisor. And she does not allege any other offensive racial statements or conduct. As noted, her allegations of any sexual harassment directed towards male co-employees are vague at best. *See Iqbal*, 556 U.S. at 678 ("A complaint does [not] suffice

7

if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and citation omitted)).  Plaintiff does not identify any other offensive statements or conduct directed at her (or others) during the course of her employment.  *Compare Ford*, 45 F.4th at 1234 (finding sufficient evidence of a hostile work environment to create factual issue for a jury where the plaintiff provided "other examples of racist comments beyond just the use of the n-word," including being called "black bitch" several times during her employment and jokes by coworkers after Obama was elected about how "Watermelon is going to be on sale," and that "Chevy Impalas will be discounted.").

Considering the totality of the circumstances alleged by Plaintiff and viewing them in the light most favorable to her, the Court finds Plaintiff has alleged a singular incident of racial enmity that is insufficient to plausibly establish a work environment sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment.  *Lounds*, 812 F.3d at 1223.

In reaching this conclusion, the Court is acutely aware of the egregious nature of use of the "n-word" in the workplace.  *See, e.g., Tademy v. Union Pacific Corp*., 614 F.3d 1132, 1145 (10th Cir. 2008).  The Court, however, must look through the lens of the appropriate Title VII standard and the factual allegations of the Complaint to determine whether its use (in this case, by a coworker), constitutes sufficiently severe or pervasive conduct to support a hostile work environment claim.   *See, e.g., Brown v. LaFerry's LP Gas Co*., 708 F. App'x 518, 522-23 (10th Cir. 2017) (affirming dismissal of hostile work environment claim based on three "inappropriate and offensive" racial comments over the course of some six months because such verbal harassment, even when combined

with co-workers giving plaintiff "the cold shoulder" after he complained, was not so "severe or pervasive that a reasonable person would find it altered the conditions of [plaintiff's] employment and created an abusive working environment"); *Deshazer v. L&W Supply Corp.*, No. CIV-23-45-F, 2023 WL 2977733 at *4 (W.D. Okla. Apr. 17, 2023) (noting that "to date the Tenth Circuit has not indicated that the single use of the n-word by a co-worker is sufficient to state a hostile work environment claim" (citing cases)); *see also Lamb v. Montrose Cnty. Sheriff's Office*, No. 19-1275, 2022 WL 487105 at *4 (10th Cir. 2022) ("[N]ot every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." (internal quotation marks and citations omitted)).

The Court has also considered Plaintiff's allegations that might be construed as "facially neutral abusive conduct." *Lounds*, 812 F.3d at 1224; *Chavez*, 397 F.3d at 833. Plaintiff alleges that in August 2022, approximately one month after Ms. Rogers used the "n-word," Plaintiff received a "wrongful write-up" from her manager, Ms. Bonta, who is white, attributing to Plaintiff an error that was, in fact, made by Ms. Rogers, a white co-employee. And Plaintiff alleges that in November 2021, approximately four months after Ms. Rogers used the "n-word" Plaintiff was removed from the weekend schedule until January 2022.

But Plaintiff alleges no facts to demonstrate any corollary between her co-worker's use of the "n-word" and any subsequent actions taken by her employer. Thus, the Court can draw no reasonable inference that the actions taken by her employer were

related to race. *Lounds*, 812 F.3d at 1227; *compare Hankey v. Town of Concord-Carlisle*, 136 F.Supp.3d 52, 68 (D. Mass. 2014) (holding that while neutral abusive conduct may be relevant in cases involving "*repeated and pervasive*" sexual comments, in a case involving use of only one gender-specific term on one occasion over the course of over a year of gender-neutral bullying did not demonstrate sufficient evidence of gender-based harassment).

In sum, Plaintiff's allegations fail to plausibly allege a Title VII hostile work environment claim based on her co-worker's use of a racial slur and/or allegations of sexual harassment directed to male co-employees. Accordingly, the Court dismisses Plaintiff's hostile work environment claim.

### B.    August 22, 2021 Write-up

Defendant moves for dismissal of Plaintiff's claim that she was discriminated against under Title VII based on the alleged wrongful write-up by Ms. Bonta on August 22, 2021. A prima facie case of employment discrimination requires a plaintiff to demonstrate the following: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Ford*, 45 F.4th at 1222 (citation omitted).

Defendant moves for dismissal on grounds that the alleged wrongful write-up does not constitute an adverse employment action. "Generally, an adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

10

significant change in benefits." *Id*. at 1222 (citation omitted). "A mere inconvenience or alteration in job responsibilities does not qualify." *Id*. Similarly, action resulting in only "[s]peculative harm[s]" will not suffice. *Aquilino v. Univ. of Kan*., 268 F.3d 930, 936 (10th Cir. 2001). A warning letter or reprimand may constitute an adverse employment action, but only if it "affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment actions." *Medina v. Income Support Div., N.M*., 413 F.3d 1131, 1137 (10th Cir. 2005). The plaintiff must show "'objective evidence of material disadvantage.'" *Alabi v. Vilsack*, 860 F. App'x 576, 582 (10th Cir. 2021) (quoting *Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 638 (10th Cir. 2012)).

Plaintiff was given the warning in August 2021. Plaintiff alleges that after this warning "[t]he hostile environment became unbearable" and Plaintiff "decided to request a change of status from full time to part time, so she [could] focus on caring for her 80-year old mother with Dementia." Compl. at 5. Plaintiff began working "Saturday and Sunday and on-call if needed." *Id*. And Plaintiff continued her employment for a year thereafter, until August 2022. Plaintiff does not allege facts to show the warning made it likely she would be terminated, undermined her current position, or affected any future employment opportunities.

Although Plaintiff states the environment was unbearable, she does so in wholly conclusory fashion. Plaintiff also contradicts this allegation stating she requested a change of status to care for mother and was permitted to do so. She also continued to work for Defendant for approximately one year. Under Tenth Circuit law in the Title

11

VII context "written letters of warning or reprimands are generally not deemed materially adverse employment actions where the record evidence establishes that the employee remains employed and/or that the reprimand has not affected her in any manner." *Sartin v. Okla. Dep't. of Human Servs*., No. 15-cv-686-TCK, 2017 WL 3033130 at *3 (N.D. Okla. July 17, 2017) (collecting cases). The Court finds Plaintiff's allegations fail to plausibly allege facts to show she suffered any adverse employment action related to the August 22, 2021 write-up.[7] Accordingly, the Court dismisses Plaintiff's Title VII discrimination claim based on the "wrongful write-up."

C. **Retaliation**

To state a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she was engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged employment action to be materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse employment action. *See Reznik v. inContact, Inc*., 18 F.4th 1257, 1260 (10th Cir. 2021).

Plaintiff alleges three separate acts of alleged retaliation. First, on November 12, 2021, Ms. Bonta, the hotel manager, took Plaintiff off the schedule for "the rest of the holiday season" in retaliation for Plaintiff having filed a grievance on November 11, 2021. Compl. at 6 and ¶ 18. Plaintiff alleges she filed the November 11, 2021 grievance

---

[7] The Court acknowledges that approximately three months after the wrongful write-up Plaintiff alleges that she was removed from the weekend schedule for the remainder of November and December 2021 and did not get placed back on the schedule until January 2022. But Plaintiff alleges she was removed from the weekend schedule in retaliation for filing a grievance on November 11, 2021, not for any performance-related issue tied to the write-up.

with Ms. Bonta and copied "Schulte Hospitality Group LLC Human Resources." *Id*.  The

grievance addressed "*systemic racism* relating to the wrongful write [sic] that took place

on August 22, 2021."  *Id*. at 5-6 (emphasis in original).  Plaintiff alleges she did not work

"for over 60 days" but returned to work "on or about January 16, 2022."  *Id*.[8]

Second, Plaintiff alleges Ms. Bonta took Plaintiff off the schedule on Sunday,

March 27, 2022, even though Plaintiff had not requested to be off on that date.  Plaintiff

alleges Ms. Bonta's actions were in retaliation for "the Courtyard by Marriott

management" having received Plaintiff's EEOC charge on March 23, 2022.  *Id*. at 6 and

¶ 19.  Plaintiff alleges she complained to "Human Resources Director Mr. Ewing" and

was added back to the schedule on the following Sunday, April 3, 2022.  *Id*. at 7, ¶ 19.

Third, Plaintiff alleges that Defendant retaliated a final time by terminating her.

Plaintiff alleges Defendant acted in retaliation by "terminating her employment during

the EEOC mediation."  *Id*. at 7, ¶ 20.

Defendant moves for dismissal with respect to the first two acts of alleged

retaliation arguing Plaintiff has failed to show she had a reasonable good-faith belief that

she was engaged in protected opposition to discrimination.   Defendant argues that

whether an employee has a "reasonable good-faith belief" has "both subjective and

objective components."  Def.'s Mot. at 8 (citing *Clark v. Cache Valley Elec. Co.*, 573 F.

App'x 693, 700 (10th Cir. 2014).  According to Defendant, under the objective prong, the

Court must look to the "underlying substantive law."  *Id*.  Defendant then argues that

---

[8] If, as Plaintiff alleges, she had requested to work only weekends, she would have missed
approximately 20 days of work for the time period November 11, 2021 through January 16,
2022.

because Plaintiff's claims of racial discrimination (based on a co-worker's use of a racial slur on one occasion and Plaintiff's "wrongful write-up") fail to state plausible claims for relief, her retaliation claim necessarily fails. *Id*. at 8-9.   Defendant contends that "under the substantive law, it was not reasonable for Plaintiff to believe that she was being unlawfully discriminated against in violation of Title VII." *Id*. at 9.

In *Reznik*, the Tenth Circuit provided a detailed discussion of the reasonableness test for Title VII retaliation claims and then "adopt[ed] an objective reasonableness inquiry that considers the law against what a reasonable employee would believe, not what a reasonable labor employment attorney would believe." *Id*., 18 F.4th at 1262 (cleaned up).  The court reiterated that Title VII protects an employee against retaliation "'whether or not an actual Title VII violation has occurred.'" *Id*. at 1263. (quoting *Hansen v. SkyWest Airlines*, 844 F.3d 914, 926 (10th Cir. 2016)).   And, the court explained, "[t]his necessitates *looking beyond the substantive law*" and requires the court to consider "what a reasonable employee would understand about the law and believe in the same or similar circumstances." *Id*. (emphasis added). Thus, the objectively reasonable inquiry "involves analyzing the law, the relevant attendant circumstances of [the plaintiff's] job, and the severity, pervasiveness, and duration of the alleged discrimination." *Id*. at 1264.

### 1.   Retaliation based on the filing of the November 11, 2021 grievance.

The Court first addresses Plaintiff's claim of retaliation based on the filing of the November 11, 2021 grievance.  The substance of that grievance, as alleged by Plaintiff, was "systemic racism."   But she does not allege facts to demonstrate any systemic

racism.  Instead, construing the allegations of the Complaint in the light most favorable to Plaintiff, the only racial conduct alleged is her co-worker's one-time use of the "n-word." For the reasons previously stated, such conduct does not rise to the level of a Title VII violation.

As the Tenth Circuit instructed in *Reznick*, however, even if the substantive law inquiry concludes with a finding that the conduct at issue is not unlawful under Title VII, the "inquiry does not end there."  *Id*. at 1264.  The Court must also evaluate "the relevant attendant circumstances" and the "severity, pervasiveness, and duration of the alleged discrimination" to determine whether it was reasonable for Plaintiff to believe she was opposing conduct unlawful under Title VII.  *Id*.

Here, there are no relevant attendant circumstances to salvage Plaintiff's claim. And the Court has already considered the severity, pervasiveness and duration of the alleged discrimination in the context of Plaintiff's hostile work environment claim. Having considered these factors, together with the substantive law, the Court finds Plaintiff fails to satisfy the second element of a retaliation claim.  She has not alleged facts to plausibly show that her belief that she was opposing conduct unlawful under Title VII was objectively reasonable.

### 2. Retaliation in response to Defendant receiving Plaintiff's EEOC charge on March 23, 2022.

Next the Court addresses the alleged act of alleged retaliation in response to Defendant having received Plaintiff's EEOC charge on March 23, 2022.  Plaintiff alleges that she was taken off the schedule on Sunday, March 27, 2022, even though she had not

requested to be taken off.  She states she was added back to the schedule the following Sunday, April 3, 2022.

Again, the Court finds Plaintiff has failed to demonstrate that she had an objectively reasonable belief that she was opposing conduct unlawful under Title VII. For substantially the same reasons stated with respect to the first alleged act of retaliation, this claim is subject to dismissal.

Moreover, the Court finds the claim fails because Plaintiff does not allege facts to plausibly demonstrate that a reasonable employee would have found the challenged action materially adverse.  An employer's action is materially adverse under Title VII if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).  The Supreme Court has instructed that "[c]ontext matters" in making this determination; "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id*. at 60.  "[A] mere inconvenience or an alternation in job responsibilities", however, does not rise to the level of materiality.

Here, Plaintiff alleges a one-time schedule change, not a permanent change in her schedule.  Moreover, her allegations demonstrate she was immediately returned to the Sunday schedule the following week. Without any additional allegations to provide

further context to this claim, the Court finds Plaintiff has failed to plausibly state a claim for Title VII retaliation.[9]

### 3. Retaliation based on the termination of Plaintiff's employment on August 21, 2022.

Finally, Defendant seeks dismissal of Plaintiff's claim of retaliation based on the termination of her employment on August 31, 2022. Defendant argues that Plaintiff does not allege facts sufficient to plausibly show a causal connection between the filing of her grievances or the March 2022 EEOC charge and her termination. Defendant relies on case law holding that temporal proximity cannot serve as the requisite causal connection where more than three months have elapsed between the protected activity and the act of retaliation. *See, e.g.*, *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (temporal proximity of three months is insufficient to show causation); *see also Lauck v.*

---

[9] Defendant further argues that with respect to the first two alleged acts of retaliation, Plaintiff fails to plausibly allege facts to show a causal connection between the protected activity and the alleged adverse actions. According to Defendant, Plaintiff has not demonstrated that Ms. Bonta, who is alleged to have engaged in the retaliatory conduct, knew about Plaintiff's protected activity. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) ("To satisfy [the causal connection] element, a plaintiff must show that the individual who took adverse action against [him or her] knew of the employee's protected activity."). But the Court rejects this argument.

Plaintiff alleges that the November 11, 2021 grievance was filed with Ms. Bonta, the General Manager. *See* Compl. at 6, ¶ 18 ("On or about November 11, 2021, the Plaintiff filed a *second grievance* with Kimberly Bonta, the General Manager at the Courtyard Marriott and copied Schulte Hospitality Group LLC Human Resources because nothing had been done about my first grievance." (emphasis in original)). Plaintiff alleges that the following day, Ms. Bonta was responsible for taking her off the schedule for the rest of the holiday season. *Id.* at 6-7, ¶ 18. Plaintiff, therefore, has sufficiently alleged that Ms. Bonta knew about the protected activity. As to the receipt of the EEOC charge in March 2022, Plaintiff alleges "the Courtyard by Marriot management" received the charge. Compl. at 7, ¶ 19. Because Plaintiff has identified Ms. Bonta as the General Manager, this allegation is also sufficient – for purposes of the Court's Rule 12(b)(6) analysis – to allege Ms. Bonta had knowledge of the EEOC charge.

*Campbell Cnty.*, 627 F.3d 805, 815-16 (10th Cir. 2010) ("We have repeatedly held that one cannot infer causation from temporal proximity alone when the time lapse between the protected activity and the retaliatory act exceeds three months.") (collecting cases).

But Defendant misstates Plaintiff's claim.  Plaintiff alleges that she was terminated on August 31, 2022, "*during* the EEOC mediation."  Compl. at 7, ¶ 20 (emphasis added). Thus, Plaintiff does not appear to be relying on the filing of her grievances or the March 2022 EEOC charge as the basis for her retaliatory termination claim.  Instead, construing the facts in the light most favorable to Plaintiff, she alleges she was terminated in retaliation for participating in the EEOC mediation.

Plaintiff's participation in the EEOC mediation is protected activity.  *See, e.g., Kelley v. City of Albuquerque*, 542 F.3d 802, 816 (10th Cir. 2008).  And Plaintiff's termination certainly qualifies as a materially adverse action.  Defendant's causal connection argument fails to address the EEOC mediation.  As alleged by Plaintiff, the mediation and termination occurred on the same day.  Therefore, the temporal proximity of these events is sufficient to establish a causal connection and Plaintiff has stated a plausible claim for relief.  *See, e.g., Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (where temporal proximity between the protected conduct and the materially adverse action is "very closely connected in time" it may provide the requisite causal connection).  Accordingly, Defendant is not entitled to dismissal of Plaintiff's retaliation claim based on her August 31, 2022 termination.

V.    **Plaintiff's Motion to Stay and Enforce a Judgment**

After the deadline for Plaintiff to file a response to Defendant's Motion to Dismiss expired, Plaintiff filed a Motion to Stay and Enforce a Judgment [Doc. No. 8].[10]  Plaintiff cites Rule 62 of the Federal Rules of Civil Procedure in support of her Motion.  And as relief, Plaintiff asks the Court to grant her motion and "dismiss" Defendant's Motion to Dismiss.  *See* Pl.'s Mot. at 8.

Rule 62 addresses stays of proceedings to enforce a judgment.  Rule 62 is inapplicable as no judgment has been entered in this case.  The Court finds Plaintiff's Motion fails to set forth any basis warranting relief.  To the extent Plaintiff's Motion is intended as a response to the Motion to Dismiss, it is untimely filed.  Moreover, Plaintiff attaches several exhibits to the Motion.  Those exhibits were not made a part of Plaintiff's Complaint.  Accordingly, the Motion will be denied.

VI.   **Conclusion**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss and Brief in Support [Doc. No. 4] is GRANTED IN PART and DENIED IN PART.  Plaintiff's retaliation claim based on Defendant's termination of her employment survives dismissal. All other claims are dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion to Stay and Enforce a Judgment [Doc. No. 8] is DENIED and Plaintiff's Response to Defendant's Response to

---

[10] This Motion is virtually identical to Plaintiff's subsequently filed Response [Doc. No. 10], discussed supra, note 3.

Motion for Summary Judgment [Doc. No. 10] is STRICKEN as filed untimely and without leave of court.

IT IS SO ORDERED this 26th day of July, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

20